USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/4/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X

Jahreek Bush,

Plaintiff,

-against-

Matthew Stone et al.,

Defendants.

----------------------------------------------------------------X

24-cv-02359-CS-VR

**ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

In December 2025, Plaintiff asked the Court to so-order three subpoenas. (ECF No. 56). The subpoenas sought information from an unidentified confidential informant (CI), an unidentified undercover police officer (UC), and the Honorable James Farell, a judge in Supreme Court, Sullivan County. (*Id.*). The Court scheduled a conference for January 29, 2026, to address the subpoenas and the status of discovery. (ECF No. 61).

At the conference, the Court explained that the subpoenas presented several problems. Among them, any so-ordered subpoena directed to the UC or CI would be difficult to serve because their identities were unknown. (Tr. at 9, ECF No. 73).[1] When asked whether Defendants would disclose those identities, counsel responded that the information was protected by the law enforcement privilege. (*Id.* at 9–11).

[1] The Court also explained that Plaintiff could not subpoena a judge to obtain information about the judge's opinions. (Tr. at 12–13, ECF No. 73). The subpoenas also sought irrelevant information like mental and physical examinations of the UC and CI. (*Id.* at 10).

The Court separated the dispute into two issues: the documents sought by the subpoenas and the identities of the UC and CI. As to the documents, the Court declined to so-order the three subpoenas but directed Defendants to "produce any documents or information within [their] custody and control that are responsive to what [was] . . . identified in the subpoena" for the UC and for the CI. (*Id.* at 17). As to the identities, the Court reserved decision on "whether the identities of the informant and police officer can remain unknown and whether these individuals could be subject to further questioning or interrogatories by [Plaintiff]." (*Id.* at 17–18). The Court directed Defendants to submit a letter explaining whether the law enforcement privilege protected those identities. (*Id.* at 18).

Plaintiff objected to the Court's rulings at the January 29th Conference. (Pl.'s Obj., ECF No. 67). By order entered February 25, 2026, Judge Seibel overruled those objections. She concluded that it was "eminently reasonable" to direct Defendants to memorialize their law enforcement privilege argument while allowing Plaintiff to determine what information he could obtain through document discovery. (Order at 3, ECF No. 74).

While those objections were pending, Defendants timely submitted their letter addressing the law enforcement privilege (Defs.' Letter, ECF No. 70), and Plaintiff was directed to respond (Mem. Endorsement, ECF No. 71). His response was delayed for several months because he was transferred to a new facility and lacked access to his legal materials and personal property until

August 2026. (Min. Entry for 03/12/2026; Min. Entry for 08/12/2026). The Court received Plaintiff's response on August 20, 2026. (Pl.'s Resps., ECF Nos. 98, 99).[2] Defendants were directed to reply (Mem. Endorsement, ECF No. 101), and timely did so. (Defs.' Reply, ECF No. 102). The privilege issue is therefore ripe for resolution.

## DISCUSSION

Defendants argue that they need not disclose the identities of the UC and the CI because the identities are irrelevant to Plaintiff's claims and, in any event, are "protected under the law enforcement privilege." (Defs.' Letter at 2–3, ECF No. 70).[3] Their papers, however, rely on authority addressing both the law enforcement privilege and the informer's privilege. (*Id.*). Although the informer's privilege is a "species of the law enforcement privilege," *Arbelaez v. City of New York*, 17-CV-6543 (JMF), 2019 WL 5634174, at *2 (S.D.N.Y. Oct. 31,

---

[2] Plaintiff filed two documents, each labeled as a "Motion to Oppose Defendant's Protective Order." (Pl.'s Resps., ECF Nos. 98, 99). The documents are identical. Thus, the Court cites only ECF No. 98 throughout this Order.

[3] In their most recent letter, Defendants argue that Plaintiff's motion at ECF No. 98 is improper because the parties never met and conferred before he filed it. (Defs.' Reply at 1–2, ECF No. 102). But the Court directed Plaintiff to respond to Defendants' initial letter asserting the law enforcement privilege; no meet-and-confer was required. (Mem. Endorsement, ECF No. 71). Although delayed and labeled a "motion," ECF No. 98 is the response the Court requested.

Defendants also argue that Judge Seibel's affirmance of the January 29th discovery rulings resolved the privilege issue on the merits. (Defs.' Reply at 2–3, ECF No. 102). But the Court did not decide the privilege issue at that conference; it only declined to so-order Plaintiff's subpoenas. The Court directed Defendants to brief the privilege issue precisely because it had reserved decision. Plaintiff was directed to pursue ordinary discovery and, if necessary, oppose Defendants' privilege claim.

2019), the two privileges are governed by different standards. The Court addresses each separately.

### 1. Plaintiff fails to rebut the law enforcement privilege's presumption against disclosure.

The Second Circuit applies a three-step burden shifting framework to disputes over the law enforcement privilege. First, the party asserting the privilege must show that the privilege applies to the information at issue—that is, that the information is what the privilege "is intended to protect." *In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010). "The purpose of th[e] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988); *see also In re City of New York*, 607 F.3d at 944.

Once that threshold is met, "[t]here is a strong presumption against lifting the privilege." *In re City of New York*, 607 F.3d at 948 (internal quotation marks and citation omitted). The party seeking disclosure must then show that (1) the case was brought in good faith and is nonfrivolous, (2) the information is unavailable through other discovery or other sources, and (3) there is "a compelling need" for the privileged information. *Id.* at 945 (internal quotation marks and citation omitted). Even if that showing is made, the court "must still

balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information." *Id.* (citation modified). Courts in this District have described this balancing test as "sensible," "multi-factored, non-mechanical, and circumstance-specific." *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

Here, Defendants have met their initial burden. Protecting "the confidentiality of sources" and "witness and law enforcement personnel" lies at the heart of the privilege. *In re Dep't of Investigation of City of N.Y.*, 856 F.2d at 484; *see also In re City of New York*, 607 F.3d at 944–45 (concluding defendant satisfied initial burden because field reports at issue contained identity of undercover police officer). The burden therefore shifts to Plaintiff to rebut the presumption against disclosure. Because he is pro se, the Court liberally construes his papers to raise the strongest arguments they suggest. *See Alexander v. City of Syracuse*, 132 F.4th 129, 146 (2d Cir. 2025).

Plaintiff satisfies the first factor. His case is not frivolous and was brought in good faith, as shown by the survival of some of his claims after Defendants' motion to dismiss. Defendants also do not argue that Plaintiff sued in bad faith. *See, e.g., White v. City of Mount Vernon*, 19 Civ. 853 (NSR)(JCM), 2022 WL 16578086, at *3 (S.D.N.Y. Nov. 1, 2022) (assuming that matter is not frivolous and was brought in good faith "since there has not been any suggestion otherwise"); *see also Benn v. City of New York,* 18-CV-722 (LGS) (OTW), 2019

WL 6717186, at *2 (S.D.N.Y. Dec. 10, 2019) (finding first factor satisfied where party "does not argue, nor is there currently any indication, that Plaintiff brought his suit in bad faith"). The other two factors, however, weigh against disclosure.

Plaintiff has not shown either that the information is unavailable elsewhere (the second factor) or that he has a compelling need for the UC's and CI's identities (the third factor). He says he needs the identities to contact them for "questioning," to "verify if this Informant was and is a resident of the city/town the [Plaintiff] was illegally arrested in," and "to verify if there are any prior occurrences/relations that may coincide to relevant allegations within the present criminal charges." (Pl.'s Resp. at 7, ECF No. 98). Liberally construed, the last request appears directed to the CI's track record and reliability, which may be relevant to Plaintiff's claims.

But Plaintiff's stated reasons do not explain why he needs the UC's or CI's identity. They show, at most, a need for the information those individuals possess or other nonidentifying information bearing on the CI's reliability. *See Seward v. Antonini*, No. 20-CV-9251 (KMK), 2022 WL 3372304, at *3–4 (S.D.N.Y. July 25, 2022) (affirming Magistrate Judge's decision denying disclosure of CI identity and explaining that other avenues could be explored to attain relevant information about CI's knowledge); *see also Arbelaez*, 2019 WL 5634174, at *4 (concluding disclosure of CI identity not warranted but allowing deposition of CI in tightly-controlled scenario because content of CI's knowledge

relevant to Plaintiff's § 1983 conspiracy claim); *Ayala v. City of New York*, No. 04 Civ. 1102(DC), 2004 WL 2914085, at *3 (S.D.N.Y. Dec. 16, 2004) (denying disclosure of CI's identity because plaintiffs failed to show "that disclosure of the name of the [CI] is essential to a fair determination of the issues in the case" or "how identification of the [CI] would assist them" (internal quotation marks omitted)).

Nor has Plaintiff shown that he cannot obtain the relevant information through other discovery. The Court previously directed Defendants to produce investigation files to Plaintiff (Min. Entry for 03/12/2026), and Defendants represented that they produced "investigation files and other documents" with "[l]imited redactions." (Defs.' Letter, ECF No. 81).[4] Plaintiff has not explained why those sources are inadequate or why learning the identities themselves is necessary. *Cf. Floyd*, 739 F. Supp. 2d at 384 (concluding second factor satisfied because party seeking disclosure demonstrated information sought was "not available through other discovery or from other sources").

That distinction matters because Plaintiff's surviving claim turns on what Rodriguez knew and represented—not on the identities of the UC and CI. To establish his § 1983 fabrication of evidence claim against Rodriguez, Plaintiff must show, among other things, that Rodriguez fabricated information. *See*

[4] As part of a separate dispute raised by Plaintiff (ECF No. 100), the Court reviewed *in camera* the documents produced to Plaintiff during paper discovery. Those documents consisted of, among other things, incident reports, arrest reports, a copy of the search warrant, and a copy of the actual affidavit Rodriguez submitted in support of the search warrant application.

*Carruthers v. Colton*, 153 F.4th 169, 189 (2d Cir. 2025) (explaining elements of § 1983 fabrication of evidence claim). That requires showing that Rodriguez knowingly made a false statement or omission. *See id.* ("The fabrication element requires only that the defendant knowingly make a false statement or omission." (internal quotation marks and citation omitted)). Plaintiff argues that the UC and CI gave Rodriguez false information, which Rodriguez then included in an affidavit submitted to a state court judge in support of a search warrant application. (Pl.'s Resp. at 1–2, ECF No. 98).

What the UC and CI told Rodriguez may therefore matter. If their accounts of facts material to the warrant differed from Rodriguez's affidavit, that discrepancy could bear on whether Rodriguez knowingly made a false statement or omission. But the inquiry has limits. Plaintiff may not use this action to relitigate whether the controlled narcotics transactions themselves occurred. If his theory requires proving that those purchases did not occur, or that he did not sell narcotics during them, success would necessarily imply the invalidity of an outstanding conviction. Such a claim is not cognizable under § 1983 unless the conviction has been invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).[5] The relevant inquiry is therefore narrower: what the

[5] Judge Seibel reached the same conclusion when she overruled Plaintiff's objections to this Court's initial decision declining to so-order Plaintiff's subpoenas. (Order at 3 n.3, ECF No. 74) ("[T]he relevance of the CI and UC to the remaining claims is unclear. Plaintiff was convicted of all counts relating to his drug sales to the CI and UC, and any suggestion in this civil case that Plaintiff was not guilty of those sales is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). While Plaintiff was acquitted of possession with intent to distribute relating to the drugs found in the January 20, 2023

UC and CI told Rodriguez about facts material to the warrant, including the location of the buys and any connection between Plaintiff and the premises to be searched, and whether Rodriguez knowingly misrepresented or omitted that information.

Plaintiff therefore may have a legitimate need for the substance of the UC's and CI's communications. But he has not shown that he needs their identities. At least in the first instance, the relevant comparison can be made from the investigation materials, the warrant affidavit, and discovery directed to Rodriguez. Plaintiff has not shown that disclosure of the UC's or CI's identity is necessary to obtain that information. *Cf. White*, 2022 WL 16578086, at *4 (finding Plaintiff demonstrated compelling need to rebut law enforcement privilege because information sought "directly relates to his claims" and "he is unable to obtain it from other sources").

Even if Plaintiff had rebutted the presumption, the balancing test would still favor nondisclosure. *See In re City of New York*, 607 F.3d at 945 (noting that once presumption is overcome, a court "must still balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information" (citation modified)). Plaintiff can obtain the substance of what the UC and CI told Rodriguez, along with nonidentifying

search of a residence, and while a malicious prosecution claim as to that count and a fabrication of evidence claim as to that search remain in the case, the only information the CI and UC would seem to have as to those claims would relate to their buys, which Plaintiff cannot challenge.").

information bearing on the CI's reliability, through less intrusive means. Revealing their identities would therefore add comparatively little at this stage. By contrast, nondisclosure protects source confidentiality and the anonymity and safety of an undercover officer and confidential informant. On this record, the balance favors nondisclosure.

**2. Plaintiff also fails to overcome the informer's privilege as to the CI.**

The informer's privilege is a species of the law enforcement privilege that specifically protects "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Like the law enforcement privilege, however, the informer's privilege is qualified. *Cullen v. Margiotta*, 811 F.2d 698, 715 (2d Cir. 1987) ("[T]he Supreme Court has recognized a qualified privilege for statements of informers to law enforcement agencies."), *cert. denied sub. nom.*, *Nassau Cnty. Republican Comm. v. Cullen*, 483 U.S. 1021 (1987). To overcome it, the party seeking disclosure must establish "that the information sought is both relevant and essential to the presentation of his case on the merits, and that the need for disclosure outweighs the need for secrecy." *Id.* at 715–16 (internal citations omitted).

"If disclosure of the informant's identity would only be marginally valuable to the defendant's case, then it is insufficient to show that the

informant was a particular witness to the action alleged." *Seward*, 2022 WL 3372304, at *2 (citation modified). Courts also consider "the availability of other means for discovery or investigation" and "the possibility of retaliation against the informant." *Id.* (citation modified).

Plaintiff has shown potential relevance, but not essentiality. As explained above, the CI's communications may shed light on what Rodriguez knew before he submitted the warrant affidavit. But the substance of those communications can be disclosed without revealing the CI's identity. The privilege does not prevent Plaintiff from obtaining otherwise discoverable evidence about what the CI told Rodriguez, nor does it bar discovery of nonidentifying information pertinent to the CI's reliability. *See id.* at *3 (affirming Magistrate Judge's decision directing defendants to produce information about CI's track record and reliability).

Plaintiff also has not shown that his need for disclosure outweighs the need for secrecy. His opposition relies almost exclusively on criminal case law. (Pl.'s Resp. at 1–13, ECF No. 98). But "there is ample authority for the proposition that the strength of the [informer's] privilege is greater in civil litigation than in criminal." *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977), *cert. denied sub. nom.*, *Bell v. Socialist Workers Party*, 436 U.S. 962 (1978); *see Seward*, 2022 WL 3372304, at *4 ("[T]here is ample authority for the proposition that the informer's privilege is stronger in civil litigation than in criminal cases." (citation modified)).

The interests on the other side are substantial. Revealing the CI's identity could jeopardize the CI's safety. *See Seward*, 2022 WL 3372304, at *2–3 (explaining how disclosure could "jeopardize the informant's safety" (internal quotation marks and citation omitted)). It could also make this CI less willing to work with law enforcement and discourage others from doing so. *Id.* at *3.

Thus, Plaintiff fails to overcome the informer's privilege as to the CI.

**3. Plaintiff remains entitled to relevant, nonprivileged information even if the UC's and CI's identities will not be disclosed.**

Protecting the UC's and CI's identities does not categorically shield the underlying facts relevant to Plaintiff's surviving claim. The informer's privilege protects the informant's identity and information that could reveal it, not the substance of the informant's communications. *See CFTC v. Parnon Energy Inc.*, No. 11 Civ. 3543(WHP), 2014 WL 2116147, at *3 (S.D.N.Y. May 14, 2014) (explaining that informer's privilege "protects only the identity of the informant—not the content of the informant's communications" and "extends to information that would tend to reveal the identity of the informant" (internal quotation marks and citations omitted)); *Seward*, 2022 WL 3372304, at *3 (similar).

Plaintiff may therefore obtain otherwise discoverable investigative materials reflecting what the UC and CI told Rodriguez, to the extent those communications bear on statements or omissions in the warrant affidavit. He may also obtain non-identifying information about the CI's track record and

reliability, provided it can be disclosed without revealing the CI's identity. *See Seward*, 2022 WL 3372304, at *3.

Defendants previously represented that they produced the investigation file to Plaintiff with "[l]imited redactions" for information covered by the law enforcement privilege and "for security and safety concerns." (Defs.' Letter at 1, ECF No. 81). The Court has since reviewed that file in connection with a separate discovery dispute. *See supra* note 4. The file includes Rodriguez's search warrant affidavit, which recounts the UC's and CI's communications about the location of the controlled buys and Plaintiff's alleged connection to the premises searched. The redactions also appear to be limited to information necessary to protect the UC's and CI's identities or other privileged material.

The only outstanding discovery concerns nonidentifying information about the CI's track record and reliability. Within fourteen days of entry of this Order, Defendants must produce any such documents, subject to appropriate redactions, and submit a letter to the Court confirming production to Plaintiff.

## **CONCLUSION**

For the reasons stated above, Defendants' request to protect the identities of the UC and CI from disclosure is GRANTED.

Within fourteen days of entry of this Order, Defendants are directed to produce to Plaintiff documents about the CI's track record and reliability, subject to appropriate redactions, and to submit a letter to the Court confirming production.

The Clerk of Court is kindly directed to close the gavels associated with ECF Nos. 98 and 99.

**SO ORDERED.**

DATED: White Plains, New York
11/4/2026

VICTORIA REZNIK
United States Magistrate Judge